**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THE ROBERT PLAN CORPORATION, EAGLE INSURANCE COMPANY, INC., and NEWARK INSURANCE COMPANY, INC., | : : : : | Civ. No. 09-200 (GEB) (DEA) |
|  | : | |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
|  | : | |
| v. | : | |
|  | : | |
| AMERICAN INTERNATIONAL GROUP INC., AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AMERICAN INTERNATIONAL INSURANCE COMPANY, AMERICAN INTERNATIONAL INSURANCE COMPANY OF CALIFORNIA, INC., and NEW HAMPSHIRE INSURANCE COMPANY, | : : : : : : : : : : | |
|  | : | |
| Defendants. | : : | |

**BROWN, Chief Judge**

This matter comes before the Court upon Defendants American International Group Inc.,

AIU Insurance Company, American Home Assurance Company, American International

Insurance Company, American International Insurance Company of California, Inc., and New

Hampshire Insurance Company's (collectively "Defendants" or "AIG") motion to dismiss

pursuant to Federal Rule of Civil Procedure 12 (b)(1). [Docket # 15].  This Court has considered

the parties' submissions and decided the matter without oral argument pursuant to Federal Rules

of Civil Procedure Rule 78.  For the reasons set forth below, this Court will grant Defendants'

motion.

I.     **BACKGROUND**

   A.     **The Parties' Relationship**

Defendants are insurance companies that, among other things, underwrite automobile

insurance policies. (Defs.' Br. at 4.)  Plaintiff The Robert Plan Corporation ("TRP"), together

with its subsidiaries, plaintiffs Eagle Insurance Company ("Eagle") and Newark Insurance

Company ("Newark," and together with TRP and Eagle, "Plaintiffs") are also automobile

insurers. (Compl., attached as Exh. A to Notice of Removal, at ¶¶ 6-8 [Docket No. 1].)

Defendants state that, for a period of time, TRP provided general agency services for Eagle,

Newark and the Defendants in connection with a specialized segment of the automobile

insurance business. (Defs.' Br. at 4 (citing Aff. of Glen M. Bronstein ("Bronstein Aff.") at ¶

3)[Docket No. 15-3].)

AIG asserts that, beginning in 1999, it entered into a series of reinsurance agreements (the

"Treaties") with Eagle and Newark such that AIG became the ultimate risk taker on all relevant

insurance business written by AIG, Eagle or Newark, and that all such business would be

administered by TRP. (Defs.' Br. at 4 (citing Bronstein Aff. at ¶ 4.))  However, according to

AIG, by 2001 the parties' relationship began to show signs of strain due to TRP's malfeasance.

(Defs.' Br. at 5 (citing Bronstein Aff. at ¶ 5.))  AIG also alleges that Newark and Eagle's

financial condition deteriorated, such that they were placed under the administrative supervision

of the New Jersey Department of Banking and Insurance ("NJDBI"). *Id.* at 4-5.  AIG further

asserts that, in an attempt to settle disputes arising under the Treaties, the parties entered into a

second round of agreements, (the "Agreements") under which AIG was the sole underwriter of

the relevant policies and TRP was to administer all policies. (Defs.' Br. at 5 (citing Bronstein Aff. at ¶ 6-7.))  Further, AIG alleges that it would fund TRP's operations necessary to administer these policies. *Id*.  However, AIG contends that, despite this attempt to reconcile, the parties' relationship further deteriorated and in September 2005, AIG filed suit in the Supreme Court of the State of New York, New York County to enforce management rights under the Agreements and recover losses for TRP's misappropriation of funds. (Defs.' Br. at 5 (citing Bronstein Aff. at ¶ 8.))

      **B.**     **The Underlying State Court Action**

On June 29, 2007, TRP's management directed the filing of a complaint in The Superior Court of New Jersey, Law Division, Mercer County (the "State Court Action").  According to the complaint in that action, the underlying dispute stems from two commutation agreements (the "Commutation Agreements") entered into by AIG and certain Plaintiffs, which were part of the broader agreements. (Compl. at ¶¶ 36-38).  TRP alleges that AIG understated its "loss reserves" and "buy-out fee figures," and as a result, Eagle and Newark received less payments than they should have under the Commutation Agreements. (Compl. at ¶¶ 45-48, 52.)

Defendants aver that at the time that the State Court Action was filed, Eagle and Newark were in financial rehabilitation, with NJDBI acting as their rehabilitator. (Defs.' Br. at 6 (citing Bronstein Aff. at ¶ 11.)) Defendants further assert that eventually, both companies were placed into court-ordered liquidation proceedings and remain in liquidation today. *Id.*  As per the liquidation order, the NJDBI was appointed as "Liquidator of Eagle Insurance and its Subsidiaries with all powers and authorities expressed or implied by N.J.S.A. 17:30 C-1, et seq. [*sic*]" (Defs.' Br. at 6 (citing Order of Liquidation, attached as Exh. 1 to the Bronstein Aff at ¶ 3.))  Arguing

that, under N.J. Stat. Ann. § 17:30C-1, the only party who can assert claims on behalf of Newark

and Eagle is the NJBDI, AIG raised the issue of whether Eagle and Newark, by virtue of their

liquidation status, could be plaintiffs in a suit without prior NJDBI permission. (Bronstein Aff. at

¶ 13.)   Accordingly, TRP requested that the State Court Action be stayed pending judicial

determination of the standing issue. (Pls.' Letter dated Dec. 5, 2007, attached as Exh. 2 to

Bronstein Aff.)  A consent order staying the proceedings to allow TRP to "promptly seek a

judicial declaration" of this matter was entered on December 7, 2007. (Consent Order, attached as

Exh. 3 to Bronstein Aff.)  It appears from the record, however, that TRP never sought such a

judicial determination. (Defs.' Br. at 7 (citing Bronstein Aff. at ¶ 14.))  Eleven months later, on

August 16, 2008, the Superior Court issued 60-day notices of dismissal to TRP, indicating that the

case would be dismissed for failure to prosecute if action was not taken as indicated in the notices.

(Defs.' Br. at 7 (citing Affidavit of Deborah Levithan ("Levithan Aff.") at ¶ 5)[Docket No. 5-4].)

Subsequently, on October 18, 2008 the State Court Action was dismissed without prejudice for

failure to prosecute. (Defs.'s Br. at 7 (citing Levithan Aff. at ¶ 9.)

C.      **The Bankruptcy Proceeding**

On August 25, 2008, TRP filed a voluntary Chapter 11 petition in the United States

Bankruptcy Court, Eastern District of New York (the "Bankruptcy Proceeding"). (Pls.' Opp. at ¶

3.)  TRP continues to operate its business and manage its property as a debtor-in-possession

pursuant to Fed. R. Bankr. P. 1107 and 1108. (Pls.' Opp. at ¶ 4.)

D.      **The Instant Motion**

Plaintiffs filed their Notice of Removal to this Court on January 14, 2009 pursuant to 28

U.S.C. § 1452 and Fed. R. Bankr. P. Rule 9027(a). (Notice of Removal at ¶ 1.)  Subsequently,

AIG filed the instant motion, challenging this Court's subject matter jurisdiction.[1] The matter was fully briefed as of April 6, 2009.

## II.    DISCUSSION

### A.    Standard of Review for Motions for Dismiss for lack of Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's "authority or competence to hear and decide the case before it." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1350 (3d ed. 2004).  In the absence of subject matter jurisdiction, this Court is without power to hear the case. *See Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 429 (D.N.J. 1999).  The party asserting jurisdiction bears the burden of demonstrating that jurisdiction is proper. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citations omitted).  Moreover, the Court is obligated to examine the issue of subject matter jurisdiction even if the parties concede the existence of jurisdiction. *See Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 801 (3d Cir. 1996).  In making its determination, the Court is not confined to examining the face of the pleading, but may consider other evidence demonstrating the existence or lack of jurisdiction, and may make factual findings when necessary to the extent that there are disputes of fact. *See Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990).

### B.    The Court Does Not Have Subject Matter Jurisdiction

 Plaintiffs filed their notice of removal relying upon 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027(a), arguing that removal is appropriate because the claims at issue in the State

---

[1] Plaintiffs also filed a Motion to Transfer Venue to the Eastern District of New York on February 2, 2009. [Docket No. 5].

Court Action relate to the Bankruptcy Proceeding and therefore are "core matters within the meaning of 28 U.S.C. § 157." (Notice of Removal at ¶ 7.)

28 U.S.C. § 1452(a) provides in relevant part:

> a *party* may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

As such, this provision allows for removal by both the plaintiff and defendant in an action. *See e.g. GSL of Ill., LLC v. Pitt Penn Oil Co., LLC*, No. 09cv0571, 2009 U.S. Dist. LEXIS 51428 at *5 (noting that Section 1452 "continues to allow plaintiffs to remove" actions to federal district courts.)  Additionally, Fed. R. Bankr. P. 9027(a) permits removal to United State Bankruptcy Courts, providing that "a notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending."

Although Fed. R. Bankr. P. 9027 sets forth the procedure for removal under bankruptcy law, it does not itself grant a district court the jurisdiction to hear a case. *Ret Sys. of Ala. v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 524 n. 7 (M.D. Al. 2002).  Further, section 1452(a) also requires that, before a matter may be removed to federal court, it must be established that a pending cause of action exists. *MHM Sponsors Co. v. Permanent Mission of Pakistan to United Nations*, 672 F. Supp 752, 753 (S.D.N.Y. 1987) ("Fundamental to the right of removal is the requirement that there be a case to remove.").  Thus, before a court can conclude whether it has jurisdiction over a matter pursuant to either of these two provisions, it must first determine whether there is a claim or cause of action in existence such that removal is possible.  As such, the

Court must determine whether the State Court Action was "pending" when Plaintiffs filed the notice of removal.

Plaintiffs contend that, at the time they filed the Notice of Removal, the State Court Action could have been reopened, despite having been previously dismissed for failure to prosecute, and therefore was still "pending" for purposes of removal. (Pls.' Opp. at ¶ 6 (citing *Holmes v. AC& S, Inc.*, 388 F. Supp 2d 663, 667 (E.D. Va. 2004).))  AIG argues that the legal effect of the dismissal is that there is no longer a live case or controversy, and that a court's ability to reopen a dismissed case is insufficient to render the matter "pending." (Defs.' Rep. at 1-2.)

The court agrees with AIG and concludes that based on the dismissal, the State Court Action was not pending at the time that Plaintiffs filed their notice of removal.  The Court is not persuaded by the case law that Plaintiffs cite in support of their argument.  For example, in *Homes*, a clerical error led to the case's dismissal. *Holmes,* 388 F. Supp. 2d at 665.  Two days after the improper dismissal, plaintiffs filed a notice of removal. *Id.*  The court found that the dismissal of the state court action did not preclude the case's removal, as it was entered in error and did not reflect the intentions of the parties. *Id.* at 666. As such, the removal of the state court action in *Holmes* was proper, as the prior dismissal was the result of a mistake and was not related to actions of the parties nor merits of the case. *Id.* at 670.  The Court also agrees with AIG that Plaintiffs' reliance on *In re Meyerland,* 960 F.2d 512 (5th Cir. 1992) is misplaced. (Defs.' Rep. at 4-5.)  *Meyerland* involves the issue of whether a judgment is "final" for the purposes of the *Rooker-Feldman* doctrine, which relates to the finality of state court judgments rendered by the highest court in the state. *Meyerland Co.*, 960 F.2d at 515-16.  As such, *Meyerland* is inapposite.

In contrast, the Court finds the case law cited by Defendants persuasive.  In *Brown v.*

*District Director, I.R.S.,* No. 01-D-1625(CBS), 2002 U.S. Dist LEXIS 12963 (D. Co. June 4, 2002) the plaintiff filed a civil suit in state court which was dismissed four days later.  A little more than two months after the dismissal, the defendant filed a notice of removal, unaware that the complaint had already been dismissed. *Id.* at *6.  Despite the fact that the defendant was unaware of the dismissal at the time it filed the Notice of Removal, the Magistrate Judge nevertheless recommended that the action be dismissed because "[a]t the time of the filing of the Notice of Removal, there was no case or controversy for the federal court to decide.  Therefore this court lacks subject matter jurisdiction over this civil action." *Id.* at *7.

    In the instant case, there was no case or controversy at the time Plaintiffs filed their Notice of Removal.  The State Court Action was dismissed as direct result of Plaintiffs' failure to prosecute the case after Plaintiffs were given appropriate notice of the pending dismissal. (Levithan Aff. at ¶¶4-9 (citing Lexis Nexis Docketing Report for State Court Action attached as Exh. A; State Court Case Management System Docketing Report for State Court Action attached as Exh. B.))  As such, dismissal was entered properly and in accordance with New Jersey State Court Rules and was not the result of a clerical error. (Levithan Aff. at ¶¶4-9 (citing Exhs. A and B attached thereto.))[2]  Additionally, Plaintiffs did not file their Notice of Removal a mere few days after the State Court Action was dismissed, as was the case in *Holmes*. *Holmes*, 388 F. Supp. 2d at 665.  Rather, the Notice of Removal was filed eleven months after the State Court Action was dismissed. (Notice of Removal at 1.)  Further, Plaintiffs have not put forth any evidence indicating that they have even taken steps to restore the State Court Action. (Defs.' Rep. at 1.)  In

---

[2]While Plaintiffs suggest that there is a legitimate dispute as to whether the State Court Action was properly dismissed, they have not stated any basis or provided any support for this argument.

8

light of the foregoing, the Court concludes that the State Court Action was not properly removed to this Court.

Plaintiffs also argue that N.J. Ct. Rule 4:50 supports the assertion that the State Court Action was properly removed.[3] (Pls.' Opp. at ¶ 7.)  Defendants, however, counter that such an interpretation would be "unworkable, at best." (Defs.' Rep. at 3.)  Specifically, AIG notes that three of the bases for relief under N.J. Ct. Rule 4:50 are not subject to the one-year time limitation, and thus, under the Plaintiffs suggested interpretation, a case could be removed many years after final judgment was entered and the time to appeal expired. *Id.* (citing N.J. Ct. R. 4:50-2).  In light of the fact that Plaintiffs have not pointed to any authority to support this expansion of N.J. Ct. Rule 4:50, the Court agrees with AIG, and declines to adopt Plaintiffs' interpretation.

Plaintiffs further assert that a dismissal at this stage in the proceedings would result in significant prejudice to them. (Pls.' Opp. at ¶ 9.)  The Court does not find this argument persuasive.  As AIG notes, the State Court Action was not dismissed "out of thin air." (Defs.' Rep. at 5.)  Instead, proper notices of removal were sent to Plaintiffs providing them adequate

---

[3]N.J. Ct. Rule 4:50 provides in relevant part:

> [o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

time to resume active litigation of the matter. (Levithan Aff. at ¶¶ 4-9 (Exhs. A and B attached thereto.))  Plaintiffs' failure to take such action resulted in the dismissal of the State Court Action. *Id.* at ¶ 7.  Plaintiffs also reference a Bankruptcy Court order that they assert requires that all litigation relating the TRP and its bankruptcy be removed to Federal Court by a particular date as support for its prejudice argument. (Pls.' Opp. at ¶ 9.)  However, Plaintiffs have not put forth any evidence of such an order's existence nor what the order mandates.  Nonetheless, even assuming that such an order exists, there are avenues by which Plaintiffs may seek relief from it.  As Defendants note, Fed. R. Bankr. P. 9006(b) allows for TRP to seek an extension of the removal deadline from the Bankruptcy Court if it can successfully reinstate the case at the state court level. (Defs.' Rep. at 5; *see also* Fed R. Bankr. P. 9006(b).)  Regardless, as AIG further notes, any prejudice dismissal may cause Plaintiffs is irrelevant to the Court's jurisdictional injury because subject matter jurisdiction determinations are not discretionary. *See Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 429 (D.N.J. 1999).

In light of the foregoing, the Court concludes that it does not have subject matter jurisdiction over this matter.

### C.    Plaintiffs' Motion to Transfer is Moot

As previously noted, Plaintiffs filed a Motion to Transfer Venue to the Eastern District of New York on February 2, 2009. [Docket No. 5].  In light of the Court's holding that it does not have subject matter jurisdiction over this matter, Plaintiffs' motion is dismissed as moot.

**III.    CONCLUSION**

For the foregoing reasons, Defendants' motion is granted.  An appropriate form of order is

filed herewith.

Dated: August 10, 2009

_____/s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.
